## CALIFORNIA *v.* TEXAS

No. 76, Orig.   Argued March 29, 1978—Decided June 22, 1978

*Jerome B. Falk, Jr.*, argued the cause for plaintiff. With him on the briefs were *Myron Siedorf, James R. Birnberg,* and *Steven L. Mayer.*

*John L. Hill,* Attorney General of Texas, argued the cause for defendant. With him on the brief were *David M. Kendall,* First Assistant Attorney General, *Lee C. Clyburn,* Administrative Assistant Attorney General, *Rick Harrison,* Special Assistant Attorney General, and *David Deaderick* and *Rick Arnett,* Assistant Attorneys General.

PER CURIAM.

The motion for leave to file a bill of complaint is denied.

MR. JUSTICE BRENNAN, concurring.

I agree with MR. JUSTICE STEWART and MR. JUSTICE POWELL that "in light of *Edelman* v. *Jordan,* 415 U. S. 651 (1974), this Court's decision in *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292 (1937), no longer can be regarded as a bar against the use of federal interpleader by estates threatened with double death taxation because of possible inconsistent adjudications of domicile." *Post,* at 615.

I am not so sure as they that *Texas* v. *Florida,* 306 U. S. 398 (1939), was wrongly decided. But, whatever the case, I would still deny California's motion to file a bill of complaint at this time. If we have jurisdiction at all, that jurisdiction certainly does not attach until it can be shown that two States may possibly be able to obtain conflicting adjudications of domicile. That showing has not been made at this time in this case, since it may well be possible for the Hughes estate to

obtain a judgment under the Federal Interpleader Statute, 28 U. S. C. § 1335, from a United States district court, which would be binding on both California and Texas. In this event, the precondition for our original jurisdiction would be lacking. Accordingly, I would deny California's motion, at least until such time as it is shown that such a statutory interpleader action cannot or will not be brought.

MR. JUSTICE STEWART, with whom MR. JUSTICE POWELL and MR. JUSTICE STEVENS join, concurring.

California seeks to invoke the original and exclusive jurisdiction of this Court to settle a dispute with the State of Texas over the question of which State has the power to collect death taxes from the estate of the late Howard Robard Hughes. The Court today, without explanation of any kind, evidently concludes that California's complaint does not state a claim within our original and exclusive jurisdiction. This conclusion seems to me squarely contrary to a longstanding precedent of this Court, the case of *Texas* v. *Florida,* 306 U. S. 398. I have joined in the order denying California's motion for leave to file this complaint only because I think *Texas* v. *Florida* was wrongly decided and should be overruled.

## I

According to the complaint, California imposes an inheritance tax on the real and tangible personal property located within its borders, and upon the intangible personalty wherever situated, of a person domiciled in the State at the time of his death, and Texas follows precisely the same policy.[1]

---

[1] Tangible personal property and realty are constitutionally subject to taxation only at the place of situs. See *Union Refrigerator Transit Co.* v. *Kentucky,* 199 U. S. 194; *City Bank Farmers Trust Co.* v. *Schnader,* 293 U. S. 112. As will be developed more fully, *infra,* at 607–610, intangible personal property may, at least theoretically, be taxed only at the place of the owner's domicile. *First Nat. Bank* v. *Maine,* 284 U. S. 312.

The complaint alleges that the taxing authorities in each State are claiming in good faith that the decedent Hughes was domiciled in their State at the time of his death, and have instituted proceedings to tax all the assets of the estate within the jurisdiction, as well as the intangibles (consisting of shares of stock in a single holding company) that constitute the great bulk of the estate's assets.[2]

The common law in both States recognizes, as a theoretical matter, that a person has only one domicile for purposes of death taxes. Nevertheless, the complaint alleges, since neither Texas nor California is or will become a party to the proceedings in the other's courts, neither will be bound by an adverse determination of domicile in the other's forum. Finally, and at the crux of the dispute, the complaint alleges that if both California and Texas obtain judgments for estate taxes in their respective courts and impose their taxes on the basis of the valuation of assets set forth in the federal estate tax return, the estate's total liability for federal and state taxes will exceed its net value. Thus, the complaint alleges that if the United States and Texas were to collect the taxes claimed by them, and if the California courts should ultimately determine that Hughes was a domiciliary of California at the time of his death, then California would be left with an entirely valid tax judgment that would be uncollectible to the extent of about $21 million.

In sum, the complaint alleges that "because there is no other means by which the conflicting tax claims of Texas and California can be resolved, this Court is the only forum which can determine the question of decedent's domicile in a manner that will bind the interested parties and assure that the state of domicile, if California or Texas, will be able to collect the tax." California invokes the original and exclusive juris-

---

[2] In each State the personal representative of the Hughes estate is contesting the tax claim, asserting that Hughes died domiciled in Nevada— the only State in the Union without death taxes.

diction of this Court on the authority of *Texas* v. *Florida, supra.*

II

In *Texas* v. *Florida* this Court accepted original jurisdiction of Texas' complaint "in the nature of a bill of interpleader, brought to determine the true domicile of [a] decedent as the basis of rival claims of four states for death taxes upon his estate . . . ." 306 U. S., at 401. Texas and each of the three defendant States claimed that the decedent, Colonel Edward Green, son of the legendary Hetty Green,[3] was its domiciliary and that it was entitled to collect death taxes upon his intangible property wherever located, as well as upon his tangible property within the State. None of the States had reduced its tax claim to judgment, but all conceded that the decedent's estate was insufficient to satisfy the total amount of taxes claimed: that is, if all four States were successful in their own courts and obtained judgments for taxes in the full amount claimed, the estate would be insufficient to cover all of the claims.[4]

Although none of the parties raised any question of this Court's jurisdiction, the Court considered the question *sua sponte.* It held that since the suit was between States, Art. III, § 2, of the Constitution conferred original jurisdiction to decide the case so long as "the issue framed by the pleadings

---

[3] See 7 Dictionary of American Biography 545 (1931).

[4] The case had been assigned to a Special Master and fully litigated on the merits before the Court raised the question of its jurisdiction *sua sponte.* The Special Master found that the net estate would amount to $36,137,335, and that the total tax claims of the United States and the four claiming States was $37,727,213—roughly $17.5 million by the United States, $4.6 million each by Texas and Florida, $5 million by Massachusetts, and $6 million by New York. 306 U. S., at 409 n. 2. Since the assets of the estate fell short of the total tax claims by only about $1.6 million, it was clear that there would be *no* shortfall unless all four state claims were sustained, and indeed that no State would go *completely* unsatisfied in its tax judgment even if the claims of all four States were sustained.

constitutes a justiciable 'case' or 'controversy' within the meaning of the Constitutional provision, and . . . the facts alleged and found afford an adequate basis for relief according to accepted doctrines of the common law or equity systems of jurisprudence . . . ." 306 U. S., at 405.

The Court found such a basis for relief by analogizing the suit to a bill in the nature of interpleader. This procedure had developed in equity to avert the "risk of loss ensuing from the demands in separate suits of rival claimants to the same debt or legal duty" by requiring the claimants to "litigate in a single suit their ownership of the asserted claim." Id., at 405–406.[5] Since the law of each of the claiming States provided that a decedent could be domiciled in only one State for purposes of death taxes, the Court held that the competing tax claims were in fact conflicting claims to the same single legal duty.

Thus viewing the suit as one in the nature of interpleader, the Court also found that the controversy was ripe for decision. Since each State's claim was sufficiently substantial to support a finding of domicile, there was a "fair probability" that each would be successful in its own courts and that the estate's assets would be insufficient to meet all of the claims. The Court therefore found a justiciable present controversy in the substantial "risk of loss [to] the state lawfully entitled to collect the tax." Id., at 410–411. The Court perceived no jurisdictional frailty in the fact that none of the claiming States had completed proceedings to collect its inheritance tax, since a plaintiff in an interpleader action was ordinarily not required to await actual institution of independent suits: "[I]t is enough if he shows that conflicting claims are asserted

---

[5] In true interpleader the stakeholder bringing suit asserts no interest in the fund. The bill in the nature of interpleader, by contrast, allows an interested claimant to seek adjudication of all claims to the fund including his own. See id., at 406.

and that the consequent risk of loss is substantial." *Id.,* at 406.[6]

The facts alleged in the complaint now before us are indistinguishable in all material respects from those on which jurisdiction was based in *Texas* v. *Florida.*[7] This Court has original and exclusive jurisdiction of disputes between two or more States, 28 U. S. C. § 1251 (a)(1), and it has a responsibility to exercise that jurisdiction when it is properly invoked. See *Cohens* v. *Virginia,* 6 Wheat. 264, 404; *Massachusetts* v. *Missouri,* 308 U. S. 1, 19–20. If *Texas* v. *Florida* was correctly decided, the Court, therefore, is under a duty in this case to grant California's motion to file its complaint.

I believe, however, that *Texas* v. *Florida* was wrongly decided. Its conclusion that there was a case or controversy among the claiming States depended entirely on the analogy to a suit in the nature of interpleader to settle the question of the decedent's domicile. Yet it seems to me that in resting upon that analogy the Court focused erroneously on the plight of the estate, which was indeed confronted with a "substantial likelihood" of multiple and inconsistent tax claims, and overlooked the fact that the dispute among the claiming States—stemming solely from the possibility that the estate might be insufficient to satisfy all of their claims—was not a case or controversy in the constitutional sense.

---

[6] On the merits the Court confirmed the Master's finding that Colonel Green was domiciled in Massachusetts at the time of his death, and that Massachusetts was therefore the only State lawfully entitled to tax the intangible personal property in his estate.

[7] Texas does not concede that all tax claims will necessarily exceed the value of the Hughes estate, and argues that this fact distinguishes the present case from *Texas* v. *Florida*. But in that case it was not the concessions of the parties that did or could confer jurisdiction upon the Court. Rather, the Court held that a mere "fair probability" of inconsistent adjudications and consequent "substantial" risk of loss was sufficient to create a constitutional case or controversy in the nature of interpleader. The claims here are, in fact, no more speculative than the claims in that case. See n. 4, *supra*.

## III

The Court's readiness in *Texas* v. *Florida* to accept the interpleader analogy is understandable in the context of the then state of the law governing multiple taxation of intangibles.

Before 1931 it had been taken as settled that, because the question of domicile was purely one of state law, it "must in many cases be impossible to have a single controlling decision upon the question," unless all interested parties could by chance or voluntary appearance be brought before a single forum. *Baker* v. *Baker, Eccles & Co.*, 242 U. S. 394, 405. But when this Court held in 1931 that shares of stock and other intangible property could constitutionally "be subjected to a death transfer tax by one state only," that being the State of the decedent's domicile, *First National Bank* v. *Maine*, 284 U. S. 312, 328–330, it seemed implicit that there must be some means of protecting that right in a federal forum. The obvious next question was under what federal-court procedures conflicting state claims of domicile were to be resolved.[8]

The somewhat unexpected answer came in *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292, which held that, at least for the ordinary estate, there was no means of forcing unwilling States to litigate the question of domicile, and the consequent right to tax the estate's intangibles, in a federal district court. In that case the estate of a decedent attempted to sue the taxing officials of two different States under the recently enacted Federal Interpleader Statute, 28 U. S. C. § 1335, to obtain a single, binding determination of the decedent's domicile at the time of his death. Despite the broad language of the *First National Bank* case, the Court held that "[n]either the Fourteenth Amendment nor the full faith and credit clause requires uniformity in the decisions of the courts

---

[8] See Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L. J. 377, 383–393 (1940), and authorities collected, *id.*, at 383 n. 17; Nash, And Again Multiple Taxation?, 26 Geo. L. J. 288, 297 (1938).

608

of different states as to the place of domicil, where the exertion of state power is dependent upon domicil within its boundaries." 302 U. S., at 299. After thus making clear that the imposition of multiple estate taxes on the basis of inconsistent adjudications of domicile presented no federal constitutional question, the opinion of the Court went on to foreclose recourse to the federal interpleader jurisdiction. Federal interpleader is based on diversity-of-citizenship jurisdiction, see *State Farm Fire & Casualty Co.* v. *Tashire,* 386 U. S. 523, 530–531, and a federal question is ordinarily not required.[9] But because the state tax officials were not acting unconstitutionally in attempting to impose taxes on the basis of valid state-court judgments, the Court held that the interpleader action was in substance a suit against the States themselves, and therefore barred by the Eleventh Amendment. See *Ex parte Young,* 209 U. S. 123.[10]

---

[9] There was no doubt that the dispute was in fact ideally suited to resolution by means of federal interpleader. Professor Chafee, upon whose work the Federal Interpleader Statute was largely based, believed that conflicting state claims of domicile presented a situation in which interpleader was "badly needed." Chafee, *supra,* n. 8, at 379. It is, he observed, "highly unfair for both state governments to tell the taxpayer, 'You have to pay only one tax,' and then make him pay twice." *Id.,* at 384. He pointed out that the paradox of inconsistent adjudications of a theoretically single domicile is one created by our federal system of government: "In a nation with a unified government, the situation in which estates of decedents are here left remediless would be impossible. Either only one agency would impose death taxes; or else a single court of review would determine domicile as between two local taxing agencies. . . . Somewhere within that federal system we should be able to find remedies for the frictions which that system creates." *Id.,* at 388. I believe such a remedy is now available. See n. 10, *infra.*

[10] I think this holding has been substantially undercut by subsequent developments. In *Edelman* v. *Jordan,* 415 U. S. 651, the Court expressed an understanding of the Eleventh Amendment quite different from that manifested in *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292. Thus it would appear that an estate confronted with multiple tax claims by two or more States could now bring an interpleader action in a federal

When the identical type of dispute was placed before this Court two years later in *Texas* v. *Florida,* the Court was thus understandably persuaded to view the complaint as presenting a question of domicile resolvable by a suit in the nature of interpleader to determine which State could alone impose the death tax.[11] But the issue of the decedent's domicile in that case was merely a coincidental premise to the real basis of the dispute among the States—the risk that the claims of the competing States would exceed the net value of the estate, and that "the state lawfully entitled to collect the tax" would find itself unable to do so.[12]

As the opinion in *Texas* v. *Florida* made clear, insofar as the rights of the *estate* were concerned, *each* of the four States was "lawfully entitled" to collect the tax: "[T]wo or more states may each constitutionally assess death taxes on a decedent's intangibles upon a judicial determination that the

---

district court seeking declaratory and injunctive relief against the tax officials of each State. I do not believe that the Tax Injunction Act, 28 U. S. C. § 1341, would preclude such a suit, if it were clear that the taxing States would not afford the estate a "plain, speedy and efficient remedy" for its claim that it should not be subjected to *multiple* taxes, *e. g.,* by recognizing an earlier determination of domicile by a sister State.

[11] At least one commentator so viewed the case when it was pending before the Court: *"Texas* v. *Florida* may become the wedge to open the door slammed in *Worcester County Trust Co.* v. *Riley.* It is so hard to believe that the Court will persist in its refusal to aid the states in the difficulty, one seizes on the slightest possibility to hope that there may yet come a solution." Nash, *supra* n. 8, at 314.

[12] At oral argument on Texas' original motion for leave to file a bill of complaint in that case "the Court indicated that there was no justiciable controversy unless the assets of the estate were insufficient to pay the tax claims of all four of the states." Tweed & Sargent, Death and Taxes are Certain—But What of Domicile, 53 Harv. L. Rev. 68, 75 (1939). This first complaint was dismissed without prejudice. *Texas* v. *New York,* 300 U. S. 642. It was upon Texas' amended complaint, plainly alleging "on information and belief" that the assets were insufficient to meet all claims, that the Court took jurisdiction in *Texas* v. *Florida.* See also *Massachusetts* v. *Missouri,* 308 U. S. 1, 15.

decedent was domiciled within it . . . ." 306 U. S., at 410. And a few months later the Court elaborated on this doctrine when it denied a motion to file a complaint in *Massachusetts* v. *Missouri,* 308 U. S. 1. There the Court made clear that both States were equally entitled to impose a tax so long as there was no risk that the estate would be depleted: "Missouri, in claiming a right to recover taxes from the respondent trustees, or in taking proceedings for collection, is not injuring Massachusetts. By the allegations, the property held in Missouri is amply sufficient to answer the claims of both States and recovery by either does not impair the exercise of any right the other may have." *Id.,* at 15.

Thus, even after *Texas* v. *Florida,* there was still no forum in which an estate confronted with conflicting tax claims could obtain a single, binding adjudication of domicile. So long as it was able to pay each State's claim, it was required to pay taxes to any State that obtained a judgment of domicile in its own courts. And, so long as the assets of the estate were sufficient to answer all claims, a State could not obtain an adjudication in this Court as to which State had "the jurisdiction and lawful right" to impose inheritance taxes. Only in the very rare situation when a decedent's estate was threatened with death tax claims of two or more States that together exceeded its assets, and only if one of the competing States then invoked this Court's original jurisdiction, would the Court undertake to decide the decedent's true domicile and grant one State the exclusive right to tax the decedent's estate.

## IV

In reality the facts in *Texas* v. *Florida,* as well as the allegations in the complaint now before us, contain the seeds of two distinct lawsuits. One is a dispute between two States as to the proper division of a finite sum of money. The other is a suit in the nature of interpleader to settle the question of a decedent's domicile for purposes of the taxes to be imposed

upon his estate. But the suit in the nature of interpleader is not within the original and exclusive jurisdiction of this Court because it is not a dispute between States. And the dispute between the States, if indeed it is justiciable at all, is certainly not yet a case or controversy within the constitutional meaning of that term.

### A

What California seeks in the present complaint is a determination of where Howard Hughes was domiciled at the time of his death. It is clear to me that, if presented by a proper party in a proper forum, this determination could and should be made in response to a bill of interpleader. See nn. 9 and 10, *supra.* But if interpleader generally affords no remedy to a decedent's estate that is faced with the threat of multiple taxation, there is no logical reason why the remedy should be available in the rare situation where the multiple taxation would wipe the estate out entirely. If it is unfair to subject an estate to two domicile-based taxes when all agree that it is possible to have only one domicile, that unfairness is just as great, if not greater, when a decedent's estate is able to pay the taxes to both States.

It must be recognized, however, that what is involved is unfairness to the *estate,* not to the taxing States. The remedy of interpleader exists, if at all, to require litigation of the inconsistent tax claims in a single forum in order to avert the risk of loss to the *estate* that would result from separate adjudications. But the only live controversy in such a suit is between each State and the decedent's estate as to the legal obligation to pay death taxes. There is, in fact, no present dispute *between the claiming States.*

In the present case, it would be of no possible concern to either California or Texas that the other might adjudge Hughes a domiciliary and succeed in taxing his estate, except for the possibility that the other's tax might exhaust the

estate entirely before it is able to satisfy its own tax judgment. Thus to the extent that the concern of this action is to prevent the possibility that the estate will be subjected to double taxation, it does not present a dispute *between two States* within the original and exclusive jurisdiction of this Court. For a State may seek the aid of this Court only to protect its own interests, not the interests of others. See *Massachusetts* v. *Missouri, supra,* at 15.

## B

The dispute between California and Texas, therefore, is not really over which of them has the right to impose a domiciliary tax upon the Hughes estate. Indeed the dilemma of multiple taxation arises only because the Constitution permits *both* States to impose the tax. *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292.[13] The real dispute arises solely from the risk that one of the States will be left with an entirely valid but uncollectible tax judgment. *Massachusetts* v. *Missouri, supra,* at 15. The conflict would be equally real if the two States were staking their tax claims to the finite assets of the estate on entirely different grounds, or if both States claimed as judgment creditors on the basis of completely different debts incurred while Hughes was still alive.

---

[13] In *Western Union Telegraph Co.* v. *Pennsylvania,* 368 U. S. 71, the Court held, by contrast, that a holder of tangible property is denied due process by a state-court judgment of escheat that does not and cannot protect the holder from the escheat claim of another State, and that the proper procedure was for the competing States to invoke the original jurisdiction of this Court. Because the Court held that the States could not constitutionally enforce their escheat laws in their own courts, this Court was the only remaining forum in which a State could escheat property that other States claimed. The situation in which the present case arises is quite different, since there is no constitutional impediment to both California and Texas imposing death taxes upon the Hughes estate by proceedings in their own courts.

In the latter situation the question of domicile would be irrelevant, and there is no compelling reason why it should have been the dispositive question in *Texas* v. *Florida.* For when this Court exercises its original jurisdiction to settle a dispute between two States it does not look to the law of each State, but rather creates its own rules of decision. "The determination of the relative rights of contending States in respect of the use of streams flowing through them does not depend upon the same considerations and is not governed by the same rules of law that are applied in such States for the solution of similar questions of private right." *Connecticut* v. *Massachusetts,* 282 U. S. 660, 670. The determination of the relative rights of two States that both claim the power to tax a decedent's estate similarly should not necessarily depend on the same considerations that would govern the question under state law.

In deciding the controversy between Texas and California the Court could, of course, determine, according to its own rules of decision where Hughes was domiciled when he died, and permit only the State of domicile to tax the estate. Cf. *Texas* v. *New Jersey,* 379 U. S. 674. But assuming there are sufficient contacts with each State to support a finding of domicile under each State's law—a premise of jurisdiction in *Texas* v. *Florida*—the Court could with equal validity decide that the proper disposition was a division of the assets of the estate based on a judgment as to the relative strength of the domicile claims, or on almost any other basis that seemed just. Indeed, for purposes of this Court's resolution of a dispute between two sovereign States, each of which has an equally valid claim under its own law, it would seem more appropriate to decide the case on some neutral principle rather than attempt to determine a single "correct" answer under state common law.

In any event the question for decision would be one to be resolved under federal law, not under the state law of domicile.

A prior adjudication of domicile in the courts of either of the claiming States would not bind this Court in any respect, or prevent it from affording whatever relief it deemed appropriate. Thus California, unlike the ordinary claimant in an interpleader action, will not be met with the bar of res judicata if its potential conflict with Texas is not pre-empted at this incipient stage. Cf. *Treinies* v. *Sunshine Mining Co.*, 308 U. S. 66, 74–78.

The original jurisdiction of this Court exists to remedy real and substantial injuries inflicted by sovereign States upon their sister States. *New York* v. *New Jersey*, 256 U. S. 296, 309; *Massachusetts* v. *Missouri*, 308 U. S. 1. As yet, California has suffered no injury at the hand of Texas, and there is indeed a "fair probability" that the injury will never come to pass. California has not obtained a judgment in its own courts that Hughes died domiciled there, but merely a conditional agreement from the estate's representative not to contest California's assertion of domicile in this Court *if* the present complaint is accepted for filing. Moreover, whether or not the estate will in fact be insufficient to meet the various tax claims may depend on how the assets are finally evaluated and what deductions the various taxing authorities allow. While the risk of conflict poses a sufficiently real threat to the estate to present a ripe controversy if an interpleader suit were filed by the appropriate parties in a federal district court,[14] that risk certainly does not amount to "clear and convincing evidence" of an actual injury of "serious magnitude" inflicted by one State upon another. *New York* v. *New Jersey, supra,* at 309; *Missouri* v. *Illinois,* 200 U. S. 496, 521.

Indeed it is not at all clear to me that the injury threatened here—essentially that one State will be left with an uncollectible judgment because another State has exhausted a debtor's funds—would be sufficient to justify the exercise of this Court's original jurisdiction even if the injury actually

---

[14] See nn. 9 and 10, *supra.*

occurred.[15]   But even assuming that it would be, such jurisdiction surely does not exist until each State has finally established an enforceable claim under state law, and it is clear that the estate's assets are insufficient to meet both claims.

It is for these reasons that I join in the order of the Court denying California's motion for leave to file its complaint.

MR. JUSTICE POWELL, concurring.

I join the excellent opinion of MR. JUSTICE STEWART and write simply to emphasize his conclusion that, in light of *Edelman* v. *Jordan*, 415 U. S. 651 (1974), this Court's decision in *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292 (1937), no longer can be regarded as a bar against the use of federal interpleader by estates threatened with double death taxation because of possible inconsistent adjudications of domicile.

As Professor Zechariah Chafee, the father of federal statu-

---

[15] The injury would be the same whatever the source of each State's claim upon the debtor.   The closest analogue of the State's complaint would seem to be the petition for a declaration of involuntary bankruptcy—a remedy created entirely by statute, not by "accepted doctrines of the common law or equity systems of jurisprudence, which are guides to decision of cases within the original jurisdiction of this Court." *Texas* v. *Florida*, 306 U. S., at 405.   See generally 1 W. Collier on Bankruptcy, ¶¶ 0.01–0.03 (1974).   I am not certain that our duty to "exercise [the] jurisdiction which is given," *Cohens* v. *Virginia*, 6 Wheat. 264, 404, compels or even empowers us to create such a remedy for the sovereign States. The status of unsatisfied creditor does not necessarily create the kind of controversy between States that can or should be resolved by means of adjudication under this Court's original jurisdiction.   This may, rather, be the kind of dispute that is best resolved by the contending States through negotiation or arbitration.   See *New York* v. *New Jersey*, 256 U. S. 296, 313; *Texas* v. *Florida, supra,* at 428 (Frankfurter, J., dissenting). Tweed & Sargent, *supra* n. 12, at 77.   Indeed many States have adopted procedures for arbitration or compromise of precisely the kind of dispute presented here.   See Uniform Interstate Arbitration of Death Taxes Act, 8 U. L. A. 255 (1972); 4 CCH Inh. Est. & Gift Tax Rep. ¶ 12,035 (1975).

tory interpleader, pointed out: "It is our federal system which creates the possibility of double taxation. Somewhere within that federal system we should be able to find remedies for the frictions which that system creates." Federal Interpleader Since the Act of 1936, 49 Yale L. J. 377, 388 (1940). The *Worcester County* Court, much to Professor Chafee's regret, 49 Yale L. J., at 388, held that the Eleventh Amendment precluded resort to federal interpleader as a remedy for the particularly unfair "friction" that can result from conflicting adjudications of domicile in death taxation cases.

But as noted by MR. JUSTICE STEWART, *ante,* at 608–609, n. 10, *Worcester County* has been effectively undercut by subsequent developments. *Edelman* made it clear that the Eleventh Amendment bars only suits "by private parties seeking to impose a liability which must be paid from public funds in the state treasury," 415 U. S., at 663, and not actions which may have "fiscal consequences to state treasuries . . . [that are] the necessary result of compliance with decrees which by their terms [are] prospective in nature," *id.,* at 667–668, at least in a case such as this, where the very controversy is a result of our federal system. An interpleader action to prevent competing States' taxing officials from levying death taxes on the basis of possible inconsistent adjudications of domicile unquestionably would fall into the latter category. Accordingly, it would appear that resort to federal interpleader no longer is proscribed by the Eleventh Amendment in this situation.