## CALIFORNIA *v.* TEXAS ET AL.

No. 88, Orig.  Decided June 14, 1982

PER CURIAM.

In this motion, California seeks leave to file a complaint against Texas under this Court's original jurisdiction.  The proposed complaint asks us to decide whether Howard Hughes was domiciled in California or Texas at the time of his death.  The decision about domicile could determine which State is entitled to levy death taxes on the estate.

This motion renews the one which California made in November 1977.  At that time, we denied leave to file.  *Cali-*

*fornia* v. *Texas*, 437 U. S. 601 (1978). Following the suggestion of four Justices who concurred in *California* v. *Texas*, the estate then sought a determination of Hughes' domicile by filing an interpleader action under 28 U. S. C. § 1335 in Federal District Court. This motion for leave to file a complaint accompanied the petition for certiorari in *Cory* v. *White*, *ante*, p. 85, in which California taxing officials requested review of the decision of the Fifth Circuit holding that the Federal Interpleader Act provided a jurisdictional basis for resolving the dispute.

We granted certiorari in *Cory* v. *White*, 452 U. S. 904 (1981), and today have held that the Federal Interpleader Act, 28 U. S. C. § 1335, does not give a federal district court jurisdiction to resolve inconsistent death tax claims by the officials of two States. See *ante*, at 91. We reached that decision because the suit is barred by the Eleventh Amendment under *Worcester County Trust Co.* v. *Riley*, 302 U. S. 292 (1937). We now also conclude that California's motion for leave to file should be granted.

First, California's bill of complaint states a "controversy" between California and Texas within the exclusive jurisdiction of this Court under 28 U. S. C. § 1251(a). It is undisputed that each State's authority to impose a death tax on the intangibles owned by a decedent depends on the decedent's having been a domiciliary of that State. Also, it is the law of each State that an individual has but one domicile. Thus only one State is entitled to impose death taxes; the outcome of this action would determine which State is privileged to tax. The other would be barred from doing so. It is apparent, therefore, that California and Texas are asserting inconsistent claims and are undeniably adversaries in this action.

Moreover, in its Memorandum in Support of Motion to File Bill of Complaint 6, California asserts:

> "The effective rate of tax in California on all amounts in excess of $400,000 is 24% (*see* CAL. REV. & TAX CODE § 13406(g)); the effective rate of tax in Texas (includ-

ing the so-called 'pick-up tax') on amounts exceeding $1,000,000 is approximately 16% (*see* TEX. TAX CODE ANN. ARTS. 14.05, 14.12); and the federal estate tax on amounts in excess of $10,000,000 is 77%, less a credit of 16% for state death taxes (*see* 26 U. S. C. §§ 2001, 2011). The combined marginal rate of tax is therefore 101%." (Footnote omitted.)

California adds that interest on the unpaid taxes will further deplete the estate. Although these allegations have not been proved, they are sufficient under *Texas* v. *Florida*, 306 U. S. 398 (1939), to characterize this case as a "controversy" between two States within the meaning of 28 U. S. C. § 1251(a).[1]

In *Texas* v. *Florida*, *supra*, this Court, raising the issue *sua sponte*, held that it had original jurisdiction over a suit "brought to determine the true domicile of decedent as the basis of rival claims of four states for death taxes upon his estate." 306 U. S., at 401. None of the States had reduced its claims to judgments, but all conceded that the estate was

---

[1] Texas asserts that California has not demonstrated the jurisdictional prerequisite of showing a "threatened injury" of "serious magnitude and imminent." Brief in Opposition to Motion for Leave to File 6, quoting *Alabama* v. *Arizona*, 291 U. S. 286, 292 (1934). Texas explains that the true value of the estate is subject to dispute and litigation and that the estate can fully satisfy all potential death tax claims against it even under California's own valuation.

The Court in *Texas* v. *Florida*, however, required only that "[t]he risk that decedent's estate might constitutionally be subjected to conflicting tax assessments in excess of its total value and that the right of complainant or some other state to collect the tax might thus be defeated was a real one." 306 U. S., at 410. The claims before us here are no more speculative than the ones there. As that case recognized, to bring an interpleader suit, "[a] plaintiff need not await actual institution of independent suits; it is enough if he shows that conflicting claims are asserted and that the consequent risk of loss is substantial." *Id.*, at 406. Thus, California's allegations are sufficient to present a controversy within the meaning of 28 U. S. C. § 1251(a). Despite the suggestion that we do so, we decline to overrule *Texas* v. *Florida*.

insufficient to satisfy the total amount of taxes claimed. The Court compared the suit to a bill in the nature of interpleader, which permits a plaintiff threatened with rival claimants to the same debt or legal duty to bring an interpleader action before the institution of the independent suits. On the basis of this analogy, the Court concluded:

> "When, by appropriate procedure, a court possessing equity powers is . . . asked to prevent the loss which might otherwise result from the independent prosecution of rival but mutually exclusive claims, a justiciable issue is presented for adjudication which because it is a recognized subject of the equity procedure which we have inherited from England, is a 'case' or 'controversy,' within the meaning of the Constitutional provision; and when the case is one prosecuted between states, which are the rival claimants, and the risk of loss is shown to be real and substantial, the case is within the original jurisdiction of this Court conferred by the Judiciary Article." *Id.*, at 407–408.

As Justice Stewart wrote when California first petitioned this Court to resolve its dispute with Texas over Hughes' estate: "The facts alleged in the complaint now before us are indistinguishable in all material respects from those on which jurisdiction was based in *Texas* v. *Florida*." *California* v. *Texas*, 437 U. S., at 606 (concurring opinion). We agree.[2]

---

[2] As in *Texas* v. *Florida*, the idiosyncratic pattern of the decedent's life provides a basis for more than one State's claims. Hughes spent much of his time in California and many of his business activities were based there. He was, however, born in Texas and long continued to use Texas as his mailing address and sometimes stated that Texas was his domicile. Indeed, a jury in Texas probate proceedings has already found Hughes to have been a domiciliary of Texas at the time of his death.

The administrator of Hughes' estate timely perfected an appeal of that judgment. Brief for Respondent Lummis in *Cory* v. *White*, O. T. 1981, No. 80–1556, p. 5. The Texas Court of Civil Appeals stayed the appeal of the Texas domicile judgment pending the outcome of the federal interpleader action. *Id.*, at 7.

Thus, this dispute is a controversy between two States within our original jurisdiction under 28 U. S. C. § 1251(a).

Second, it is appropriate to exercise our jurisdiction in this case. A determination that this Court has original jurisdiction over a case, of course, does not require us to exercise that jurisdiction. We have imposed prudential and equitable limitations upon the exercise of our original jurisdiction. As we explained in *Illinois* v. *City of Milwaukee*, 406 U. S. 91, 93–94 (1972):

> "We construe 28 U. S. C. § 1251(a)(1), as we do Art. III, § 2, cl. 2, to honor our original jurisdiction but to make it obligatory only in appropriate cases. And the question of what is appropriate concerns, of course, the seriousness and dignity of the claim; yet beyond that it necessarily involves the availability of another forum where there is jurisdiction over the named parties, where the issues tendered may be litigated, and where appropriate relief may be had. We incline to a sparing use of our original jurisdiction so that our increasing duties with the appellate docket will not suffer."

At the time we decided *California* v. *Texas*, it seemed to several Members of the Court that statutory interpleader might obviate the need to exercise original jurisdiction. JUSTICE BRENNAN, for example, explained:

> "If we have jurisdiction at all, that jurisdiction does not attach until it can be shown that the two States may possibly be able to obtain conflicting adjudications of domicile. That showing has not been made at this time in this case, since it may well be possible for the Hughes estate to obtain a judgment under the Federal Interpleader Statute, 28 U. S. C. § 1335, from a United States district court, which would be binding on both California and Texas. In this event, the precondition for our original jurisdiction would be lacking. Accord-

ingly, I would deny California's motion, at least until such time as it is shown that such a statutory interpleader action cannot or will not be brought." 437 U. S., at 601–602.

Our decision in *Cory* v. *White* has now shown that such a statutory interpleader action cannot be brought. Thus, the precondition for the exercise of original jurisdiction has been met.

There were several other uncertainties that affected the case when we denied California's earlier motion. At that time, Texas urged that the controversy was not ripe because of the pending claim of the Howard Hughes Medical Institute that a "lost will" left the entire estate to it and the contention that the so-called "Mormon Will" was valid. A jury has since rejected the "Mormon Will," the Nevada Supreme Court and the Texas Probate Court the "lost will." Another changed circumstance is the expiration of a conditional settlement agreement between California and the estate. Texas had argued because of this allegedly collusive agreement, the case was not a justiciable case or controversy.

We conclude that our original jurisdiction is properly invoked under *Texas* v. *Florida,* and we grant California leave to file its bill of complaint. The defendants shall have 60 days to answer.

*It is so ordered.*

Justice Powell, with whom Justice Marshall, Justice Rehnquist, and Justice Stevens join, dissenting.

In *Cory* v. *White, ante,* at 89, the Court today reaffirms the holding of *Worcester County Trust Co.* v. *Riley,* 302 U. S. 292 (1937), that "inconsistent determinations by the courts of two States as to the domicile of a taxpayer [do] not raise a substantial federal constitutional question." Under *Worcester County* there is no constitutional bar to both Texas

and California taxing the Hughes estate on the ground that he was a domiciliary.

Having reaffirmed the authority of *Worcester County*, the Court concludes that "California and Texas are asserting inconsistent claims and are undeniably adversaries in [the interpleader action]." *Ante,* at 165. But its own premises will not support this conclusion. If both States legally can tax the Hughes estate, a controversy between them would arise only if both were to obtain money judgments against the estate and, further, if the estate then were to prove insufficient to satisfy both claims. Yet it is no more clear today than it was in 1978, when we unanimously decided *California* v. *Texas,* 437 U. S. 601 (1978), that this situation ever will occur. Thus, under the Court's own assumptions, there is no ripe controversy between the States, and no basis for our consideration of the original complaint in No. 88, Original.

As if discomfited by the logic of its position, the Court argues that the jurisdictional allegations here at least are "no more speculative," *ante,* at 166, n. 1, than those in *Texas* v. *Florida,* 306 U. S. 398 (1939). Yet as Justice Stewart argued persuasively in our 1978 decision in *California* v. *Texas, supra,* it is inescapable that *Texas* v. *Florida* was wrongly decided. See 437 U. S., at 606, 611–612 (Stewart, J., concurring). The mere possibility of inconsistent state determinations of domicile, resulting in a still more remote possibility of the estate's being insufficient to satisfy the competing claims, simply does not give rise to a case or controversy in the constitutional sense. "The necessity that the plaintiff who seeks to invoke judicial power stand to profit in some personal interest remains an Art. III requirement. A federal court cannot ignore this requirement without overstepping its assigned role in our system of adjudicating only actual cases and controversies." *Simon* v. *Eastern Kentucky Welfare Rights Org.,* 426 U. S. 26, 39 (1976). See *Valley Forge Christian College* v. *Americans United for Separation of Church and State,* 454 U. S. 464, 472 (1982); *Warth* v. *Seldin,* 422 U. S. 490, 508 (1975).

Nor is the Court entitled to base its finding of original jurisdiction on an "analogy" between the original action and "a bill in the nature of interpleader." *Ante,* at 167. Under the Interpleader Act, the stakeholder is the "plaintiff." 28 U. S. C. § 1335. Having been notified of claims by two or more "claimants," the stakeholder normally would have standing to litigate the validity of each of the individual claims. The presence of these justiciable controversies between stakeholder and claimants satisfies the "case or controversy" requirement of Art. III. Interpleader jurisdiction merely provides for convenient resolution in a single forum. Interpleader jurisdiction thus is irrelevant to the question whether there is an independently justiciable controversy "between" States.