### In re FAIRCHILD AIRCRAFT CORP., Debtor.

### Bettina M. WHYTE, Trustee, Plaintiff,
v.
### GMF INVESTMENTS, INC. et al., Defendants.

Bankruptcy No. 90–50257–C.
Adv. No. 90–5269–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 5, 1991.

---

See also 124 B.R. 488.

Deborah Williamson, San Antonio, Tex., for plaintiff.

Charles Ory, Dallas, Tex., for defendants.

### DECISION AND ORDER ON MOTION OF PLAINTIFF TO STRIKE CROSS CLAIMS AND COUNTERCLAIMS

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the joint motion of Bettina M. Whyte ("Fiscal Agent/Trustee"), Merlin Express Inc. ("Merlin") and Fairchild Gen–Aero, Inc. ("Gen–Aero") to strike or dismiss the Counterclaims filed by GMF Investments, Inc. ("GMF"), Metro Aviation, Inc. ("Metro") and Morgan Spectrum, Inc. ("Morgan") (collectively referred to as "Defendants"). Upon consideration of the evidence presented, the arguments of counsel and the pleadings in the matter, the court enters this its decision disposing of these matters.

## JURISDICTION

This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and may enter a final order with respect thereto. 28 U.S.C. § 157(c)(2). This matter is a core proceeding. 28 U.S.C. §§ 157(b)(2)(A), (O).

## FACTUAL BACKGROUND

There are a number of related entities that comprise GMF Investments, Inc. ("consolidated group"). Fairchild Aircraft Corporation ("Debtor"), Merlin and Gen–Aero, former subsidiaries of Debtor, were all part of this consolidated group. Merlin and Gen–Aero are now subsidiaries of Fairchild Acquisitions, Inc. Bettina Whyte was the Chapter 11 Trustee for the Debtor, whose plan was confirmed in September 1990. Ms. Whyte was appointed the Fiscal Agent under that plan. The Defendants Morgan and Metro are related entities to Defendant GMF Investments. As the common parent corporation, GMF in prior years filed consolidated federal income tax returns on behalf of all related entities, as permitted by 26 U.S.C. § 1501. There was no prior explicit agreement or understanding among the Debtor and the other related entities regarding the disposition of any tax refunds or the allocation of any losses resulting from the filing of the consolidated return.

On August 30, 1990 the Chapter 11 Trustee filed this Complaint to Determine Title to Tax Refunds and Application for Preliminary and Permanent Injunction. The original purpose of the Complaint was to safeguard certain tax refunds received and expected to be received from dissipation by other non-debtor entities which might assert an entitlement to all or a portion of these refunds (such as GMFI) and to determine title to such refunds. The estate has so far received two refund checks from the I.R.S. aggregating $1,709,-867.00, both of which checks were made payable to "GMFI Investments, Inc. and Subs." Roughly $2,600,000.00 in total expected tax refunds due to the consolidated group is at issue.

Defendants counterclaim that the Trustee somehow conspired to "gain control" over the tax refunds at issue. Defendants assert that the 1989 return, prepared at the direction of the Trustee, misallocated the losses and the income between the various components of the GMF consolidated group and that, as a result, Defendants' entitlement to a share of the tax refunds was unfairly reduced.[1] They further contend that the accounting for the various entities is incorrect and that such flaws will ultimately affect who gets the refund and may, in fact, result in I.R.S. penalties.[2] The Defendants request that they get their rightful share of the present and future tax refunds and that they receive damages for the loss of interest income resulting from their not being able to immediately receive their portion of the tax refunds at issue.[3] They further assert damages "suffered as a result of the Trustee's calculated actions," suggesting an intent on the part of the Trustee to harm other members of the consolidated group by the manner in which it prepared and filed the consolidated returns from which these refunds resulted. Defendants also request a determination "that [they have] no liability for any penalties and interest arising out of the 1988 and 1989 returns."

Defendants also assert a number of crossclaims against Deloitte–Touche (formerly known as Touche–Ross) and T. Charles Parr, a tax accountant with Deloitte–Touche. Deloitte–Touche prepared the tax returns in issue. Defendant claims that Mr. Parr and Deloitte–Touche have violated their duty of loyalty to GMF and have subjected them to potential liability

---

1. Behind the defendants' theory is the presupposition that the parties' respective share of the consolidated tax refund would be allocated based upon the tax attributes of each respective related entity.

2. Defendant's speculation as to what the I.R.S. may or may not do is premature at this stage. One can only conjecture whether the I.R.S. will levy penalties for inaccurate or incomplete tax returns.

3. That is, from being forced to endure this action to determine entitlements to the tax refunds.

out of the 1988, 1989 and 1990 tax returns. The relief requested is that these accountants be held liable for any penalties and interest as a result of the 1988, 1989 and 1990 tax returns and damages for this breach of loyalty. Neither of Parr nor Deloitte–Touche filed a motion to dismiss the crossclaims asserted against them and, accordingly, such these claims will not be addressed here.

## ANALYSIS

### I. FORUM

■ A threshold issue is whether this court is the appropriate forum in which to determine the competing rights to this tax refund. Defendants charge that, because this is at bottom an action to recover money, this court lacks the subject matter jurisdiction to even entertain this action, or at the least, lacks the authority to enter final orders in this adversary proceeding. They also charge that this court lacks the authority to conduct the jury trial they have requested, because this is an action at law while this court is a court of equity which cannot conduct jury trials.[4]

A number of recent decisions have had little difficulty in finding that this court is indeed an appropriate forum in which to determine the competing rights of parties in a tax refund resulting from a consolidated return, where one of the parties is a debtor in bankruptcy. *See In re Revco D.S., Inc.,* 111 B.R. 631 (Bankr.N.D.Ohio 1990), *rev'd on other grounds,* 898 F.2d 498 (6th Cir.1990) (income tax refund resulting from carryback of net operating loss against taxable income attributable to former subsidiary in prior year when it was member of debtor's consolidated tax group belonged to subsidiary); *Matter of Florida Park Banks, Inc.,* 110 B.R. 986 (Bankr.M.D.Fla.1990) (declaratory judgment brought under 28 U.S.C. §§ 2201 and 2202 to determine whether income tax refund from In-

ternal Revenue Service was property of bankruptcy estate holding that the filing of consolidated tax return by affiliated corporations does not *per se* affect the entitlement of tax refunds between those corporations); *In re Prudential Lines, Inc.,* 107 B.R. 832 (Bankr.S.D.N.Y.1989) (net operating losses are property of the estate); *see also* 28 U.S.C. §§ 1334(b), (d), 157(b)(2)(A); 11 U.S.C. §§ 505, 541. The bankruptcy court clearly has subject matter jurisdiction over questions involving property of the estate, including jurisdiction to decide respective entitlements to a given fund in which the estate asserts an interest. 28 U.S.C. § 1334(b); 11 U.S.C. § 541(a)(1); *see also Matter of Wood,* 825 F.2d 90, 93 (5th Cir.1987) (bankruptcy court has subject matter jurisdiction over any matter which could conceivably affect the administration of the estate). The bankruptcy court might even have *exclusive* jurisdiction over the matter in question, because it involves control over property of a bankruptcy estate. *See* 28 U.S.C. § 1334(d). In all events, there can be little doubt that the courts which have so freely exercised their jurisdiction in cases such as this have been justified in doing so. Defendants' jurisdictional arguments are accordingly rejected.

### II. INTERPLEADER

■ The Fiscal Agent faces the potential of multiple liability. Each of the individual affiliates of GMF Investments, Inc. may assert competing and potentially inconsistent claims to the tax refunds in issue. Three affiliates, GMFI, Morgan Spectrum, and Metro Aviation, have done exactly that. One legitimate method for handling such situations is interpleader, to let a court determine the competing rights of the various parties.

■ The Fiscal Agent's complaint is, in essence, an interpleader action, though it is denominated a complaint for declaratory and injunctive relief. In fact, in the Joint

---

4. *See In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir.1990). This court need not address this point at this stage in the proceedings, based upon the ultimate disposition of this motion. However, neither the Supreme Court nor the Fifth Circuit have definitively answered this question either way. This court presumes that it has the authority to conduct jury trials, all other things being equal. *See M & E Contractors, Inc. v. Kugler–Morris General Contractors,* 67 B.R. 260, 267 (N.D.Tex.1986).

Motion to Strike or Dismiss Counterclaims and Crossclaims, the Fiscal Agent characterizes her complaint as an effort to "interplead the tax refunds before the court...." An interpleader action is designed to protect a stakeholder from the possibility of multiple claims upon a single fund. *See generally,* Wright & Miller, Federal Civil Practice & Procedure § 1704 (1972); *Maryland Casualty Company v. Glassell Taylor & Robinson,* 156 F.2d 519 (5th Cir. 1946). The interpleader statute and rule are "liberally construed to protect the stakeholder from the expense of defending twice, as well as to protect him from double liability." *New York Life Insurance Company v. Welch,* 297 F.2d 787, 790 (D.C.Cir. 1961). The only real prerequisites to interpleader are the existence of a specific fund or property, and stakeholder's demonstrating present or potential subjection to adverse claims, *Dunbar v. United States,* 502 F.2d 506 (5th Cir.1974), resulting in exposure to double or multiple liability. *Fulton v. Kaiser Steel Corp.,* 397 F.2d 580 (5th Cir.1968).

These conditions are met here.[5] Because the basic goal of an interpleader action is to determine entitlements, it is functionally no different than an action for declaratory relief which asks the same question and seeks the same kind of answer. *Morongo Band of Mission Indians v. California State Board of Equal.,* 849 F.2d 1197, 1203 (9th Cir.1988) (quoting *Thomas v. Shelton,* 740 F.2d 478, 485 (7th Cir.1984)) (the purpose of, and the procedural advantage provided by, an interpleader action may be the same as that of a declaratory judgment action—the actions "enabl[e] a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconven-

ience."). Nor does the fact that the Fiscal Agent sought injunctive relief as part of her complaint disqualify the action, as interpleaders frequently operate in conjunction with the use of injunctions against efforts by competing claimants to assert a superior right in or collection upon a *res* once the interpleader action has been initiated. *Ashton v. Josephine Bay & C. Michael Paul Foundat. Inc.,* 918 F.2d 1065, 1068 (2nd Cir.1990); *see also U.S. Steel Corp. Plan for Emp. Ins. v. Musisko,* 885 F.2d 1170, 1176 (3rd Cir.1989), *cert. den.,* —— U.S. ——, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990).

■ It is true that the initial complaint contended that the monies in issue were the *exclusive* property of the Debtor's estate, and that declaratory and injunctive relief are forms of relief beyond the general purview of interpleader. However, a stakeholder is not precluded from seeking interpleader relief merely because the stakeholder asserts an interest in the *res. California v. Texas,* 437 U.S. 601, 98 S.Ct. 3107, 3110, 57 L.Ed.2d 464 (1978); *Lummis v. White,* 629 F.2d 397, 400 (5th Cir.1980). Courts have held that interpleader may be appropriate even where the claimants assert the stakeholders independent liability. *See Libby, McNeill, and Libby v. City Nat. Bank,* 592 F.2d 504, 507 (9th Cir.1978) (the mere potentiality of independent stakeholder liability, separate from liability for the interpleaded fund, will not defeat interpleader jurisdiction); *Treinies v. Sunshine Mining Co.,* 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939) (interpleader proceeding in which both claimants had previously secured judgments against the stakeholder); *Olivier v. Humble Oil and Refining Co.,*

---

**5.** This court is justified in looking to the substance of the Fiscal Agent's complaint, apart from any formal name that happens to be given to such complaint. *Registration Control Systems, Inc. v. CompuSystems, Inc.,* 922 F.2d 805, 808 (Fed.Cir.1990) (quoting 2A Moore's *Federal Practice* para. 7.05, at 7–17 (1990)) ("it is a motion's substance, and not merely its linguistic form, that determines its nature and legal effect."). In a similar context, although not directly on point, it is not necessary that the particular legal theory be pleaded in complaint if the plaintiff sets forth sufficient factual allega-

tions to state a claim showing that he is entitled to relief under some legal theory. *Fitzgerald v. Codex Corp.,* 882 F.2d 586 (1st Cir.1989); *see Ghebreselassie v. Coleman Secur. Service,* 829 F.2d 892 (9th Cir.1987) (properly pleaded claim in federal court need not specify under what law it arises, since complaint need only set forth short and plain statement of claim showing that pleader is entitled to relief); *Bechtel v. Robinson,* 886 F.2d 644 (3rd Cir.1989) (as long as issue is pled, party does not have to state exact theory of relief in order to obtain a remedy).

225 F.Supp. 536 (E.D.La.1963); *see also Walker v. Pritzker*, 705 F.2d 942, 944 (7th Cir.1983) (waiver of a claim against the stakeholder, but not against the fund, does not affect jurisdiction under the interpleader action).

■ Trustees, of course, have standing to bring interpleader actions. *First Nat. Bank v. Perfection Bedding Co.*, 631 F.2d 31 (5th Cir.1980); *Palomas Land & Cattle Co. v. Baldwin*, 189 F.2d 936 (9th Cir.1951).

■ The common fund here is comprised of the tax refunds received (and to be received) by the consolidated group. The threat of multiple liability is that the Fiscal Agent may be sued by each and every affiliated entity of GMF each claiming some type of interest in the tax refunds. The Fiscal Agent has no assurances that those claims might not be competing—what if the aggregate claims exceed 100% of the *res?* Counterclaims against the Fiscal Agent will not defeat interpleader as an appropriate remedy. *Libby, McNeill*, 592 F.2d at 507. Nor will claims by the stakeholder against the *res. See California v. Texas*, 437 U.S. 601, 98 S.Ct. 3107, 3110, 57 L.Ed.2d 464 (1978); *Lummis v. White*, 629 F.2d 397, 400 (5th Cir.1980). Accordingly, this court holds that an interpleader action is an appropriate method to handle the ultimate disposition of the tax refunds, and that this action qualifies as an interpleader.

Because the fundamental purpose of this litigation exercise is in the nature of interpleader, to determine the parties' entitlements to the tax refunds, the counterclaims of the defendants do indeed appear to be redundant, as plaintiff contends. Defendants' request nothing more than does the plaintiff, namely, a determination of their share of the tax refund, together with an award for damages arising from any wrongdoing on anyone's part in assembling and promptly distributing the refund to the appropriate parties. Characterizing this action as in the nature of an interpleader highlights the superfluity of defendants' counterclaim.

**6.** Such returns might form the basis for the equitable apportionment among the affiliated entities of the tax thus computed, though nei-

## III. CONSOLIDATED TAX RETURNS

■ Defendants' damage theories may be immaterial if the tax statutes impose no particular duty on the filing entity to make any particular distribution to the various affiliates participating in the consolidated return. Indeed, there is no such duty imposed.

Affiliated corporations are authorized to file a single, consolidated tax return, combining the tax attributes of all affiliates as though they were one entity. *See* 26 U.S.C. §§ 1501–1564; Treas.Reg. § 1.1502–75, 26 C.F.R. § 1.1502–75 (rev. 1989). However, although filing consolidated returns, each participating affiliate continues to be treated as a separate taxable unit, the consolidated returns operating only to unite them for the purpose of tax computation. *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 55 S.Ct. 60, 79 L.Ed. 232 (1934).[6] Affiliated corporations filing consolidated returns continue to retain their individual taxpayer identity. *Beneficial Loan Soc. of Bethlehem v. United States*, 71 Ct.Cl. 557, 48 F.2d 686, cert. den. 284 U.S. 633, 52 S.Ct. 17, 76 L.Ed. 539 (1931). Consolidated tax returns' members' incomes and losses are merely summed and reported as taxable income for the entire consolidated group. Treas.Reg. §§ 1.1502–2, 12.

This is not to say that filing a consolidated return is not without consequences. Under regulations promulgated pursuant to 26 U.S.C. § 1502, both a common parent and each subsidiary are severally liable for the entire tax for a consolidated period, including any deficiency; thus a parent corporation in whose name consolidated returns were filed is liable for the entire amount of tax due from the consolidated group, as is each affiliated entity. *J & S Carburetor Co. v. Commissioner*, 93 T.C. 166, 168 (1989); *Turnbull Inc. v. Commissioner*, 373 F.2d 91 (5th Cir.1967), *cert. den.* 389 U.S. 842, 88 S.Ct. 72, 19 L.Ed.2d

ther the Tax Code nor the Treasury Regulations seem to mandate such a result. *Id.*

105 (1967); Treas.Reg. § 1.1502–6(a) (individual members of the consolidated group remain severally liable for any unpaid income tax liability from the consolidated return).

What entity is entitled to ultimately receive the benefit of a consolidated tax refund is not addressed in the Internal Revenue Code. *Jump v. Manchester Life & Cas. Management Corp.*, 579 F.2d 449, 452 (8th Cir.1978); *In re Bob Richards Chrysler–Plymouth Corp., Inc.*, 473 F.2d 262, 265 (9th Cir.1973), cert. den. 412 U.S. 919, 93 S.Ct. 2735, 37 L.Ed.2d 145 (1973) ("absent any differing agreement we feel that a tax refund resulting solely from offsetting the losses of one member of a consolidated filing group against the income of that same member in a prior or subsequent year should inure to the benefit of that member. Allowing the parent to keep any refunds arising solely from a subsidiary's losses simply because the parent and subsidiary chose a procedural device to facilitate their income tax reporting unjustly enriches the parent"); *see also Western Pacific Railroad Corp. v. Western Pacific Rail Co.*, 197 F.2d 994, 1004 (9th Cir.1951), *reh'g denied*, 197 F.2d 1012, *rev'd on other grounds*, 345 U.S. 247, 73 S.Ct. 656, 97 L.Ed. 986, *prior opinion aff'd*, 206 F.2d 495, *cert. denied*, 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407 (1954) ("nothing in the [Internal Revenue] Code or Regulations ... compels the conclusion that a *tax savings* must or should inure to the benefit ... of the company which has sustained the loss that makes possible the tax saving") (emphasis added).[7]

## IV. THE LAW APPLIED TO DEFENDANTS' COUNTERCLAIMS

■ Defendant's claims are both immaterial and redundant when one views them in conjunction with the Internal Revenue Service regulations, case law and the general nature of interpleader. The assertions that the Fiscal Agent is attempting to maximize her portion of the refund presses the ultimate issue already presented in the Trustee's complaint, namely, how is the tax refund to be apportioned. In fact, the assertion that the Trustee was "violating duties" when first obtaining actual possession of the tax refund is especially questionable when viewed in the context of the Internal Revenue Code provisions for tax refunds to certain fiduciaries (such as the Chapter 11 Trustee and her successor, the Fiscal Agent):

> Refunds to certain fiduciaries of insolvent members of affiliated groups. Notwithstanding any other provision of law, in the case of an insolvent corporation which is a member of an affiliated group of corporations filing a consolidated return for any taxable year and which is subject to a statutory or court appointed fiduciary, the Secretary may by regulation provide that any refund for such taxable year may be paid on behalf of such insolvent corporation to such fiduciary to the extent that the Secretary determines that the refund is attributable to losses or credits of such insolvent corporation.

26 U.S.C. § 6402(i). The Trustee's actions in initially receiving the refunds against the background of this section of the Tax Code are appropriate, or at the least not actionable. Add to this the fact that there was no agreement between the parties to the contrary, that the tax refunds were placed into the registry of the court pending the ultimate disposition of this declaratory action, and that there is no I.R.S. regulation allocating such refunds among consolidated members (*see Jump v. Manchester Life & Cas. Management Corp.*, 579 F.2d at 452), and one finds it difficult to imagine just what other course of action a reasonable person in the position of the Chapter 11 trustee could have responsibly taken. The Trustee cannot, as a matter of law, incur liability for having filed the consolidated return or for having arranged for the estate to receive the tax refund checks, especially because she initiated this action to then promptly determine respective rights in the refunds.

The Defendant's prayer for relief seeks a declaration as to how the tax refunds are

---

**7.** Our case involves a refund as compared to a     tax savings, however, the analogy is appropriate.

to be distributed—exactly what the Trustee is requesting. Until there has been such a court determination, no party has a superior right to any of the tax refunds, regardless of pleading contentions to the contrary. Interpleader is designed to handle just such a controversy and no liability can attach to the Trustee's actions in placing the tax refunds with this court for a declaration of respective entitlements consistent with interpleader relief. The request in Defendant's counterclaim is merely redundant of the plaintiff's request for declaratory relief.

Even if we were to take at face value Defendants' contentions that they were somehow deprived of "immediate access" to the refund (by virtue of its having been obtained by the Trustee rather than by the parent entity of the consolidated group, GMFI), there is an inherent inconsistency in the logic of Defendants' claim that they suffered "lost opportunity cost" damages. If the Defendants had in fact received what they are now saying they were deprived of, i.e., the tax refunds or their share, they would have had no choice but to follow a procedure similar to that which the Trustee here employed. Because the ownership of the monies would be in issue regardless of who received the check, Defendants would also have had to have sought a court determination as to how such refund would be apportioned. This is especially so here because one of the parties claiming a portion of the refund is a bankruptcy estate. Failure to account for property of a bankruptcy estate could result in violations of the automatic stay, liability under Section 549 for unauthorized post-petition transfers, or worse.[8]

Defendants are really arguing that they should have received the monies first so they could generate income, in essence, preserving any resulting opportunity cost for their own benefit. In fact, there was no opportunity cost to lose. Even had Defendants received the refund first, the monies would still have had to have been placed into an account awaiting judicial determination. The only conceivable way

that Defendants could have derived any "opportunity cost" benefit from the refund would have been for them not to have disclosed that they had, in fact, received the monies in the first place. In short, all Defendants have lost is the opportunity to convert or expropriate the estate's money. This court cannot award damages that could only have been obtained in violation of the law.

If the Defendants had any true conviction that the consolidated returns were improperly completed (as they broadly suggest), the most obvious (and perhaps only) remedy would be for them to file an amended consolidated return. Instead, the Defendants are expecting this court to determine that the consolidated returns were improperly completed (warranting an allocation of the refund different from that suggested by the figures used in the return), without making the Internal Revenue Service a party. In essence, the Defendants invite this court to permit the parties to present the IRS with one set of figures, and this court with another set. This court will not consider any different figures than those presented to the IRS, which means that the parties will be bound by the figures in the current return unless they elect to file an amended return. To adopt any other course is to issue an open invitation to the commission of tax fraud.

Given that the disputed monies are accumulating interest, whoever gets the refund, or portion thereof, will also be entitled to this interest. In essence, all parties will come out whole insofar as "lost interest" damages are concerned. This element of Defendants' counterclaim is groundless.

Defendants claims are also immaterial. By the very nature of filing consolidated returns the individual entities lose the status of individuality to a degree. Income and expenses for the consolidated group are added in sum total. Treasury Regulation § 1.1502–2 and 12. It would not matter if there were internal inconsistencies, e.g. income understated for one entity and overstated for another, because only the

---

8. *See* 18 U.S.C. § 152.

overall effect is relevant for tax purposes. Any internal problems would "wash out." Viewed in this context, Defendant's claims are immaterial as it does not matter how the income and expenses are apportioned internally as it is the net effect of the consolidated group that is important for tax purposes.[9] Defendants are already free to present arguments as to how much of the refunds they are entitled to in response to plaintiff's original declaratory action, making that portion of the counterclaims seeking damages growing out of allocation of tax attributes and the like both redundant and immaterial.

 Defendants also request that this court make a determination that "it [sic] has no liability for any penalties and interest arising out of the 1988 and 1989 returns." Given that there is a split of authority over whether bankruptcy courts have jurisdiction over the determination of nondebtors' tax liability, the court cannot justify striking this aspect of the Defendant's counterclaim as a matter of law at this time. *See Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921 (3rd Cir.1990). The court, however, must require the Defendants to show that resolution of this issue would conceivably affect the administration of the bankruptcy case. 28 U.S.C. § 1334(b); *Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987); *Quattrone Accountants*, 895 F.2d at 926 ("the outcome of [this] proceeding could conceivably have any effect on the estate being administered in bankruptcy"). Absent such a showing, this portion of the counterclaim would have be to stricken as well for lack of subject matter jurisdiction.

## CONCLUSION

"[T]he court may order stricken from any pleading any insufficient defense or any *redundant, immaterial*, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis added). Defendants are requesting the identical relief the Fiscal Agent is requesting. Both parties want to know who gets how much of the tax refunds. The Fiscal Agent has promptly deposited the monies in controversy with the court. This court is an appropriate forum to determine such apportionment. Accordingly, Defendants' counterclaims (except the request for a determination of their tax liability) against the Fiscal Agent, Merlin and Gen–Aero are hereby stricken, with prejudice to refiling, as the relief requested is redundant and immaterial.

So ORDERED.

---

**9.** Recall that an examination into internal inconsistencies is really nothing more than a call upon this court to "audit" the consolidated return. If the numbers are indeed incorrect, then, as pointed out above, the appropriate remedy is an amended return.