NEVADA EIGHTY–EIGHT, INC., Plaintiff,

v.

TITLE INSURANCE COMPANY OF MINNESOTA, Defendant.

TITLE INSURANCE COMPANY OF MINNESOTA, Counterclaimant,

v.

NEVADA EIGHTY–EIGHT, INC., Counterdefendant.

TITLE INSURANCE COMPANY OF MINNESOTA, Third Party Plaintiff,

v.

G.C. SWARTS MANAGEMENT AND DEVELOPMENT, INC., Frank A. Ellis, Jr., Andrew J. Welch, M.D., Third Party Defendants.

No. CV–S–90–251–PMP (LRL).

United States District Court, D. Nevada.

Dec. 21, 1990.

Rex A. Jemison, Robert T. Eglet, Beckley, Singleton, De Lanoy Jemison & List, Las Vegas, Nev., for plaintiff.

John Sacco, Las Vegas, Nev., for defendant Title Ins. Co.

Kirk B. Lenhard, Jones, Jones, Close & Brown, Las Vegas, Nev., for third party defendant Swarts Management.

James C. Mahan, Mahan & Ellis, Las Vegas, Nev., for third party defendant Frank Ellis.

## ORDER

PRO, District Judge.

*Factual and Procedural Background*

Plaintiff/Counterdefendant NEVADA EIGHTY–EIGHT, INC. ("Nevada 88") is a Nevada corporation with its principal place of business in Clark County, Nevada. Defendant/Counterplaintiff TITLE INSURANCE COMPANY OF MINNESOTA, INC. ("Title Insurance"), is incorporated under the laws of Minnesota and has its principal place of business outside of Nevada.[1] Third–Party Defendant FRANK A. ELLIS, JR., is a citizen of the State of Nevada. Third–Party Defendant G.C. SWARTS MANAGEMENT AND DEVELOPMENT, INC. ("SMD") is a Nevada corporation with its principal place of business in Clark County, Nevada.

In 1988, Ellis owned a one-third undivided interest in 117 acres of property located in Henderson, Nevada. He agreed to act as Nevada 88's agent and negotiate the sale of the remaining two-thirds ownership from his associates to Nevada 88. The parties planned to build a casino, hotel, and mall of automobile dealerships on the land. After acquiring the property, Ellis placed title for the remaining two-thirds interest in Minnesota Title Holding Company ("Minnesota Holding"). Ellis retained equitable title while Minnesota Holding held legal title to the entire property. On May 3, 1988, escrow was opened with Title Insurance. On the same day, Ellis appointed Nevada 88 as his nominee who was to be treated as an original principal to the escrow account.

After some delay, escrow was scheduled to close January 4, 1989.

On August 7, 1988, Nevada 88 amended the escrow instructions to Title Insurance as follows:

The above referenced escrow is hereby Amended in the following manner only:

Final vesting in the real property conveyed in this escrow is to be as follows:

NEVADA EIGHTY–EIGHT, INC., a Nevada Corporation, an undivided fifty-one and 67/100 (51.67) percent interest and,

G.C. Swarts Management & Development, Inc., a Nevada corporation, an undivided fifteen (15.00) percent interest.

The remaining thirty-three and 33/100 (33.33) percent will remain vested in Frank A. Ellis, Jr.

Exhibit C to Plaintiff Nevada 88's Complaint (# 1).

Subsequent to receiving this amendment from Nevada 88, Title Insurance received a letter on January 3, 1989, from SMD instructing Title Insurance not to allow escrow to close but rather to cancel the escrow account:

Please accept this letter as an authorization and direction to terminate the above-referenced escrow account and return all deeds, assignments and other instruments of transfer to the seller. The reasons for this termination (with which you need not be concerned) consist of numerous and various breaches, defaults, and express repudiations of obligations on the part of the remaining purchaser Nevada Eighty Eight, Inc., of assumed obligations under that certain letter of intent dated April 25, 1988, between the undersigned and the seller, and otherwise on account of the failure of Nevada Eighty Eight, Inc. to honor obligations it has to G.C. Swarts Management and Development, Inc.

Exhibit 4 to Title Insurance's Third Party Complaint (# 12).

Escrow did not close on January 4, 1989, as scheduled.

SMD brought suit in the Eighth Judicial District Court in Clark County, Nevada (Case No. A 271351) against Nevada 88. Nevada 88 then counterclaimed against SMD. Nevada 88 then brought a third-party action against George Swarts (of SMD)

---

**1.** *See infra* n. 3.

individually, Frank Ellis, Jr., Minnesota Holding, and other persons not before this Court. Ellis filed an additional third-party complaint against Nevada 88 and other persons not before this Court.

Title Insurance moved to intervene and was denied permission to do so. Additionally, when Nevada 88 moved to amend its Third–Party Complaint to include Title Insurance, that motion was successfully opposed by Minnesota Holding.

On April 13, 1990, Nevada 88 brought this suit against Title Insurance. On July 30, 1990, Title Insurance filed its Answer and Counterclaim (# 11). On August 6, 1990, Title Insurance filed a Third–Party Complaint (# 12) against SMD, Ellis, and a person no longer party to this suit.

### Motions Before this Court

There are currently five Motions pending before this Court:

1. Third–Party Defendant SMD's Motion to Dismiss (# 22) which was filed on August 28, 1990. On September 10, 1990, Defendant/Counterclaimant/Third–Party Plaintiff Title Insurance filed a Response to SMD's Motion to Dismiss (# 26). Plaintiff/Counterdefendant Nevada 88 filed an Opposition (# 36) on September 19, 1990. SMD filed a Reply (# 43) on October 3, 1990.

2. Also before the Court is Nevada 88's Motion to Dismiss Title Insurance's Counterclaim for Declaratory Relief (# 23) filed on August 29, 1990. On September 13, 1990, Title Insurance filed its Opposition (# 33). Title Insurance also filed a Supplemental Points and Authorities In Opposition to Plaintiff's Motion to Dismiss (# 45) on October 4, 1990. Nevada 88 filed a Reply in Support of Its Motion to Dismiss (# 38) on September 25, 1990.

3. Another pending matter is Third Party Defendant Frank A. Ellis, Jr.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (# 24) which was filed on August 30, 1990. On September 10, 1990, Title Insurance filed its Response (# 26) to Ellis's Motion. On September 19, 1990, Nevada 88 filed its Opposition

(# 36) to Ellis's Motion. Ellis filed his Reply (# 41) on October 3, 1990.

4. A fourth pending motion is Title Insurance's Motion to Dismiss and Request for Oral Argument (# 34) which was filed on September 14, 1990. Nevada 88 filed its Opposition (# 39) on October 1, 1990. On October 9, 1990, Title Insurance filed its Reply (# 46).

5. The final motion before the Court is Nevada 88's Motion to Dismiss Third Party Complaint (# 36), filed on September 19, 1990. Title Insurance filed its Opposition (# 40) on October 3, 1990. On October 23, 1990, Nevada 88 filed its Reply (# 52). Title Insurance filed a Supplemental Opposition (# 53) on October 30, 1990.

### Defendant's and Third–Party Defendants' Motions to Dismiss (# 22, # 24 and # 34)

█ SMD, Ellis, and Title Insurance have moved this Court to dismiss Nevada 88's Complaint (# 1) for lack of subject matter jurisdiction. In doing so, they assert virtually identical arguments. First, they claim that the Court lacks subject matter jurisdiction to hear this action as there are necessary and indispensable absent parties whose joinder would destroy diversity. Second, they claim that the Court should look beyond SMD's and Ellis's status as Third-party Defendants and treat them as aligned in interest with Defendant Title Insurance. If such a realignment were to take place, diversity would again be destroyed. Under either of these theories, the Court would have no subject matter jurisdiction and would have to dismiss the entire suit.

█ SMD, Ellis, and Title Insurance urge the Court to dismiss Nevada 88's Complaint (# 1) for failure to join SMD and Ellis as defendants to the main action. Currently, the status of SMD and Ellis is strictly that of Third–Party Defendants. If they had been joined originally as defendants, complete diversity among the parties would not have existed. However, under normal circumstances the presence of nondiverse third-party defendants does not de-

stroy diversity. Fed.R.Civ.P. 24. *See also Lesher by Lesher v. Andreozzi*, 647 F.Supp. 920, 922 (M.D.Pa.1986). Third-party claims do not require independent jurisdictional bases. *Field v. Volkswagenwerk AG*, 626 F.2d 293, 299 (3d Cir.1980). They fall within a court's ancillary jurisdiction and are proper when they share a "common nucleus of operative fact" with a case already before the court. *Freeman v. Howe*, 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1860). A plaintiff in a diversity suit may not assert claims against nondiverse third-party defendants. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 376–77, 98 S.Ct. 2396, 2403–04, 57 L.Ed.2d 274 (1978).

■ Of course, a plaintiff desiring a federal forum may omit nondiverse parties from his or her claim and sue them separately in a state court proceeding. E. Chemerinsky, *Federal Jurisdiction* § 5.3 (1989). Further, defendants need not bring third-party actions whenever possible. If there is a simultaneous litigation of the same transaction or occurrence in state and federal court, whichever court decides first will preclude the other's decision. *Id.*

■ Federal Rule of Civil Procedure 19 provides the only exception to the standard that plaintiffs and defendants/third-party plaintiffs may choose their adversaries. Rule 19(a) provides that if certain factors are present, absent parties are considered "necessary" and should be joined if possible:

> (a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obli-

gations by reason of the claimed interest....

Fed.R.Civ.P. 19(a). Under *Sierra Club v. Watt*, 608 F.Supp. 305, 319–21 (E.D.Cal. 1985), the burden of proving that joinder is necessary rests with the party asserting it. *See also Federal Deposit Ins. Corp. v. Beall*, 677 F.Supp. 279 (M.D.Pa.1987); 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1609, at 129 n. 5 (2d ed. 1990).

Under the first prong of Rule 19(a), this Court must determine whether complete relief will be available to persons already party to the litigation if SMD and Ellis are not joined. In the present case, Nevada 88 claims that Title Insurance breached contractual and fiduciary duties which were owed to it. Nevada 88 seeks monetary damages for this alleged breach. Should it prove its case, Plaintiff can recover complete relief for Title Insurance's alleged wrongdoing. It is important to note that Nevada 88 is not requesting specific performance or any other remedy which might otherwise affect title to the property, or which Title Insurance might be unable to provide. Therefore, Rule 19(a)'s first prong is not satisfied.

■ Rule 19(a)'s second prong also remains unsatisfied. As a threshold matter, the absent person must claim an interest in the subject of the action. Only Ellis has alleged that he has such an interest; SMD does not even make the claim. In any case, the absent person must be:

> so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Rule 19(a)(2). Here, neither SMD nor Ellis has an interest in the damages associated with Title Insurance's alleged breach of contract between Title Insurance and Nevada 88. Furthermore, even with the absence of SMD and Ellis, Title Insurance is not left with a substantial risk of incurring

double or inconsistent obligations by reason of the claimed interest. No other entity has a property interest in the money damages for a breach of contract claim. Neither SMD nor Ellis was party to the contract at issue and so neither can claim to have an interest in the resolution of its alleged breach.[2]

Under Rule 19(b), if joinder of a person indispensable to ongoing litigation would destroy diversity and therefore the absent person cannot be joined, the action must be dismissed. Fed'l R.Civ.P. 19(b). *See also* 7 C. Wright, M. Miller & K. Kane, *Federal Practice & Procedure* § 1610, at 145 (2d ed. 1990). Since neither SMD nor Ellis qualifies as a necessary party, neither is indispensable. If an absent party is not necessary under Rule 19(a), then it is *a fortiori* not indispensable under Rule 19(b). *See* 3A J. Moore, *Moore's Federal Practice* ¶ 19.07-2[0], at 19-128 (1990), *citing Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir.1983), (where government was not a necessary party a determination as to indispensability and the feasibility of joinder was unwarranted), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144. However, as an alternative to its finding that neither SMD nor Ellis is a necessary party, the Court finds that neither is an indispensable party.

The determination of whether an absent person is indispensable should be made in light of practical considerations, *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 118-19, 88 S.Ct. 733, 742-73, 19 L.Ed.2d 936 (1968); *Takeda v. Northwestern Nat'l Life Ins. Co.,* 765 F.2d 815, 819 (9th Cir.1985), and with flexibility. *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir.1987). "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser,* 815 F.2d at 242. *Accord Prescrip-*

*tion Plan Serv. Corp. v. Franco,* 552 F.2d 493, 496 (2d Cir.1977); *Street v. Vitti,* 685 F.Supp. 379, 383 (S.D.N.Y.1988); 7 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1610, at 147-48 (2d ed. 1990).

A court ruling on a Rule 19(b) motion should consider four factors to determine if a party is indispensable. First, the Court should consider "to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties." Rule 19(b). Since the remedy sought by Nevada 88 does not concern title to or interest in the 117 acres of land in Henderson, Nevada, and instead concerns only money damages to the extent that Nevada 88 suffered losses from breach of contract, breach of fiduciary duty, and loss of economic opportunity, it is difficult for this Court to understand how Ellis and SMD would be prejudiced by the action going forth in their absence. Although Ellis and Title Insurance have both alleged that there would be such prejudice, neither has specified how it would be brought about. Moreover, no collateral estoppel or res judicata effect would apply to Ellis or SMD for facts and issues raised in the main action. In light of these considerations, the Court finds only minimal prejudice would result to Ellis and SMD should a judgment be rendered in their absence.

The second factor a court should consider under Rule 19(b) is the extent to which the relief granted can be shaped so as to lessen or avoid any potential prejudice. Here, Nevada 88 has sought only money damages for its interest in the real estate and escrow at issue. Due to the nature of the relief sought, the Court finds that relief has already been shaped so as to mitigate any potential prejudice.

The third factor the Court must consider is whether a judgment rendered in the person's absence will be adequate. Rule 19(b). Clearly, neither Ellis's nor SMD's absence

---

**2.** This Court might have reached the opposite conclusion had Nevada 88 sought specific performance of the contract, since then rights of third parties to the contract might have been affected. The Court notes that Rule 19(a) applies even if rights are not technically affected by litigation in the persons' absence: it is enough that as a practical matter their rights will be affected.

will materially prejudice Nevada 88's right to complete relief should it prove its claims against Title Insurance.

Fourth, the Court should consider whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder of an indispensable party. Rule 19(b). Ellis and Title Insurance both assert that the state court already provides an alternative forum in which Nevada 88 can litigate its claims against Title Insurance. However, they ignore the fact that the state court has steadfastly refused to have Title Insurance enter the on-going litigation. Therefore, Nevada district court is unavailable as a forum in which Nevada 88 can air its grievances against Title Insurance.

In *Provident Tradesmen's Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–111, 88 S.Ct. 733, 737–738, 19 L.Ed.2d 936 (1968), the Supreme Court announced additional, somewhat overlapping "interests" that a court should consider when ruling on a Rule 19(b) motion. A court should consider the interest of the Defendant in avoiding multiple litigation and inconsistent relief. *Id.* at 110, 88 S.Ct. at 738. Title Insurance is not involved in the ongoing state court litigation. Furthermore, neither SMD nor Ellis would be able to assert claims against Title Insurance based on its failure to close escrow on January 4, 1988. SMD admittedly instructed Title Insurance not to close the account as scheduled, and Ellis apparently capitulated in that decision. Therefore, each would be estopped from bringing a duplicate suit against Title Insurance.

Another factor to be considered is whether there can be complete, consistent, and efficient settlement of controversies. *Provident Tradesmens Bank*, 390 U.S. at 111, 88 S.Ct. at 738. Here, since Title Insurance is not involved in the state action there will not be complete relief unless this Court provides a forum in which Nevada 88 may proceed against Title Insurance.

■ The Third–Party Defendants have argued to the Court that they and Nevada 88 should be treated as joint obligors to the escrow account and as tenants-in-common to the 117 acres of land in Henderson, Nevada for the purposes of determining whether they are indispensable. However, the parties have not met their burden of demonstrating to the Court that their rights had vested when escrow failed to close. At best, Nevada 88, Ellis, and SMD were only potentially tenants-in-common. In every negotiation for a joint or common tenancy, the parties are expected to deal with each other at arms length. It appears that such negotiation took place among these parties and was ultimately unsuccessful, consequently providing the basis for the ongoing state court litigation. In any case, should the Court find that Ellis and SMD should be joined as indispensable joint obligors, they would be joined as plaintiffs (as bearing interests in common with Nevada 88), and diversity would not be destroyed.

After considering the above factors, the Court, in an exercise of its discretion, finds that neither SMD nor Ellis is an indispensable party under Rule 19(b) without whom this action could not proceed.

■ The second theory counselling dismissal presented by SMD, Ellis, and Title Insurance concerns realignment of the parties. Each urges the Court to look beyond Ellis's and SMD's status as Third–Party Defendants and treat them as aligned in interest with Defendant Title Insurance. They further argue that if the Court realigns the Third–Party Defendants and treats them as Defendants to the main action, diversity jurisdiction is destroyed and the Court must dismiss the entire action. *See* SMD's Motion to Dismiss (# 22) at 3.

The seminal case considering the doctrine of realignment is *Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). In *Chase National Bank*, the Supreme Court held, "Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.'" *Id.* at 69, 62 S.Ct. at 18, (quoting

*City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905)).

Other courts have followed the Supreme Court's reasoning. For instance, the Ninth Circuit has held:

> The courts, not the parties, are responsible for aligning the parties according to their interest in the litigation. If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff for jurisdictional purposes.

*Dolch v. United Cal. Bank*, 702 F.2d 178, 181 (9th Cir.1983) (citations omitted). *See also Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir.1987).

*Chase National Bank*'s holding was premised on the requirement that federal courts only consider matters where there is a true case or controversy among the parties. U.S. Const. art. III, § 2. In other words, realignment doctrine is, at its foundation, concerned with the constitutional ban on advisory opinions. If parties who are nominally adverse to each other actually share interests with regard to the "principal purpose of the suit," *East Tennessee, Virginia, and Georgia R.R. Co. v. Grayson*, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382 (1886), or the "primary and controlling matter in dispute," *Merchants Cotton Press & Storage Co. v. Insurance Co. of N. Am.*, 151 U.S. 368, 385, 14 S.Ct. 367, 372, 38 L.Ed. 195 (1894), then courts should recognize this reality, realign the parties, and determine whether other jurisdictional requirements (such as complete diversity) are satisfied. *United States Fid. & Guar. Co. v. Algernon–Blair, Inc.*, 705 F.Supp. 1507 (M.D.Ala. 1988); *United States Fid. & Guar. Co. v. Korman Corp.*, 693 F.Supp. 253 (E.D.Pa. 1988). If diversity is defeated by the realignment process, then the court should dismiss the entire case.

Many courts have considered realigning plaintiffs and defendants according to their true interests in the litigation. *See, e.g.,*

*Fidelity & Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261 (7th Cir.1983); *Dolch v. United California Bank*, 702 F.2d 178 (9th Cir.1983); *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146 (7th Cir.1981); *Anschutz Corp. v. Natural Gas Pipeline Co. of Am.*, 632 F.Supp. 445 (D.Utah 1986); *Bonar, Inc. v. Schottland*, 631 F.Supp. 990 (E.D.Pa.1986); *Wimes v. Eaton Corp.*, 573 F.Supp. 331 (E.D.Wisc.1983); *Ramsey v. Merchants Nat'l Bank of Ft. Smith, Ark.*, 534 F.Supp. 112 (W.D.Ark.1981).

Relatively few, however, have considered whether the doctrine of realignment should extend to third parties. *See, e.g., New England Mut. Life Ins. Co. v. Beckman*, 1990 WL 94003, 1990 U.S. Dist. LEXIS 8211 (E.D.Pa. July 2, 1990); *Casualty Indem. Exchange v. High Croft Enters.*, 714 F.Supp. 1190 (S.D.Fla.1989); *Leick v. Schnellpressenfabrik AG Heidelberg*, 128 F.R.D. 106 (S.D.Iowa 1989).

In *Beckman*, the defendant filed a third-party complaint, and then argued that the third-party defendant's interests should be realigned with the plaintiff in the original proceeding. 1990 U.S. Dist. LEXIS 8211 at 2. The *Beckman* court rejected defendant's claim, stating without elaboration that the third party defendant was properly within its ancillary jurisdiction and so did not destroy diversity.

In *High Croft*, the court determined that although it was unclear whether the defendant was seeking to join an insurance agent as a party-plaintiff or as a third-party defendant, the court would have to realign the insurance agent as a party-plaintiff since its interests and that of the existing plaintiffs would be identical. 714 F.Supp. 1190, 1 n. 1 (S.D.Fla.1989). Although the court notes that "the addition of a third party often falls beyond the indispensable party analysis conducted later" within its decision, it rests a large part of its realignment analysis on the fact that the action against the nominal third-party defendant, the insurance agent, is not the usual third-party claim involving indemnity or contribution. *Id.* As such, the court states, it does not properly fall within the court's

ancillary jurisdiction and is instead a necessary claim. *Id.* Understood in this manner, the court's decision in *High Croft* should be read as subscribing to realignment of third-party defendants only when they are indispensable.

In *Leick*, the court held that a college was an indispensable party to a tort action under Rule 19. 128 F.R.D. 106, 109 (S.D. Iowa 1989). Since joinder of the college destroyed diversity, the Court held that dismissal was warranted. *Id.* at 109. As an alternative holding, the court stated that even if the case could have proceeded with the college as a non-indispensable third-party defendant, the court would have realigned its interest and thereby disclosed a lack of complete diversity. *Id.*

 The better view, and the one adopted by this Court, is that third party defendants will only be realigned according to their interests if they qualify as necessary or indispensable parties under Rule 19. In other words, the Court will realign a party along its true interests only if it should have originally been brought into the case either as a plaintiff or a defendant. This view is consistent with the underlying rationale for realignment doctrine. Whether a case or controversy exists must be determined by examining the positions of plaintiffs and defendants. The interests of nonnecessary third parties cannot destroy a genuine controversy existing between plaintiff and defendant, nor can its interest create such a controversy.

 Furthermore, defendants should not have an unfair procedural advantage over plaintiffs. Just as plaintiffs cannot create diversity artificially by failing to join indispensable or necessary parties, defendants should not be able to destroy diversity by bringing in a third party who is neither necessary nor indispensable. Strategic maneuvering should not be permitted to destroy diversity. *Mollan v. Torrance,* 22 U.S. (9 Wheat.) 957, 6 L.Ed. 154 (1824); *Fidelity & Dep. Co. of Maryland v. Sheboygan Falls,* 713 F.2d 1261, 1266 (7th Cir.1983); *Reilly Mortgage Group, Inc. v. Mount Vernon Sav. & Loan Ass'n,* 568 F.Supp. 1067, 1074 (E.D.Va.1983). *See also*

J. Moore, 3A *Moore's Federal Practice* ¶ 19.03[1], at 52 (2d ed. 1980).

 Finally, while courts deciding whether there is a sufficient case or controversy may look to pleadings beyond the complaint and answer, courts should normally be able to determine whether diversity exists at the time plaintiffs' complaints are filed. *Smith v. Sperling,* 354 U.S. 91, n. 1, 77 S.Ct. 1112, n. 1, 1 L.Ed.2d 1205 (1957); *Co-Efficient Energy Sys. v. CSL Indus., Inc.,* 812 F.2d 556, 557 (9th Cir. 1987). Facts which can be used for forming the determination that realignment of parties is proper must have been in existence at the time the action was commenced. *Farmers Alliance Mut. Ins. Co. v. Jones,* 570 F.2d 1384, 1387 (10th Cir.1978). Events subsequent to the filing of a complaint will not deprive a court of jurisdiction. *Id.; American Motorists Ins. Co. v. Trane Co.,* 657 F.2d 146, 149 (7th Cir.1981). One such subsequent event that should not deprive a court of jurisdiction is the filing of a third-party complaint.

In the case at bar, a genuine controversy exists between Plaintiff Nevada 88 and Defendant Title Insurance. Plaintiff Nevada 88 seeks monetary damages relating to Title Insurance's alleged failure to comply strictly with escrow instructions. No party to this suit disputes the fact that there is a genuine disagreement of the rights and liabilities between Plaintiff and Defendant. Under these circumstances, then, the Court will not realign the interests of unnecessary and non-indispensable Third–Party Defendants to determine whether diversity continues to exist.

Since the Court has determined that neither SMD nor Ellis is a necessary or indispensable party to this litigation under Rule 19, the Court will not consider realigning their interests to determine whether they should be considered defendants for the purposes of diversity. The Court will therefore deny SMD's Motion to Dismiss (# 22), Ellis's Motion to Dismiss (# 24), and Title Insurance's Motion to Dismiss (# 34).

### Nevada 88's Motion to Dismiss Counterclaim (# 23)

██ Plaintiff/Counterdefendant Nevada 88 has moved this Court to dismiss the first and second causes of action in Title Insurance's Counterclaim (# 11). The first cause of action therein seeks interpleader of all parties who may have an interest in the escrow account which forms the subject of this litigation, Title Insurance's account # 11–65076. Nevada 88 claims that since Title Insurance's involvement in this action is not limited to that of an innocent stakeholder, it should not be allowed to interplead other persons and thereby place itself in a position to seek its own dismissal.

As a preliminary matter, it is unclear under which theory of interpleader Title Insurance is proceeding. There is no reference either to Federal Rule of Civil Procedure 22 or to any federal statutory scheme in its Counterclaim for Interpleader (# 11). In Title Insurance's Supplemental Points and Authorities (# 45), there is a suggestion that it intends to proceed under statutory, not common law interpleader.[3] The Court will analyze Nevada 88's Motion to Dismiss as though Title Insurance had properly pled both non-statutory and statutory interpleader theories.

██ Non-statutory "true" interpleader is a doctrine which enables a disinterested stakeholder, such as an insurance company or escrow holder, to deposit with the Clerk of the Court funds to which various claimants may seek inconsistent rights. *California v. Texas*, 437 U.S. 601, 605 n. 5, 98 S.Ct. 3107, 3110 n. 5, 57 L.Ed.2d 464 (1978). All various claimants are joined through the interpleader action, and may then litigate among themselves their respective claims to the funds at issue. Once the claimants have been joined, the disinterested stakeholder may then be dismissed from the suit.

██ The Court clearly has jurisdiction to hear a claim for non-statutory interpleader under Federal Rule of Civil Procedure 22(1). Since federal civil procedure rules by their own decree cannot enlarge federal jurisdiction, Federal Rule of Civil Procedure 82, actions under Rule 22(1) (non-statutory interpleader) must be based on independent jurisdictional grounds. Put another way, the complete diversity rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), applies to common law interpleader actions. Since there is complete diversity between Counterclaimant Title Insurance[4] and all claimants to the escrow accounts at issue, the Court would have jurisdiction to interplead the other claimants.

██ However, if Title Insurance's action is based on non-statutory interpleader under Rule 22(1), then general equitable and common law rules apply to it. One such general principle is that "if a definite and independent liability on the part of an escrow holder to one of the parties to the escrow exists, the right of the escrow holder to interplead the conflicting claim is barred." 28 Am.Jur.2d *Escrow* § 40, at 53 (2d ed. 1966). Where there is a clear allegation of a breach of a duty owed by the party seeking interpleader to one of the claimants, a claim for non-statutory interpleader should not be granted. *See California v. Texas*, 437 U.S. 601, 605 n. 5, 98 S.Ct. 3107, 3110 n. 5, 57 L.Ed.2d 464 (1978).

---

**3.** Title Insurance argues, "In its Reply Points and Authorities NEVADA EIGHTY–EIGHT, INC. quotes at length from Volume 4, *Pomeroy on Equity Jurisprudence.* What NEVADA EIGHTY–EIGHT, INC. fails to point out is that the applicability of the subject quotation is limited to the equitable remedy of Interpleader, independent of any statutory enactment." Supplemental Points and Authorities (# 45) at 3.

**4.** Although Title Insurance claims that its principal place of business is in Las Vegas, Nevada, Third–Party Complaint (# 12) at 2, the Court assumes that this statement is merely an inadvertence. If it is truly Title Insurance's principal place of business, not only does the Court not have jurisdiction to hear the Counterclaim, but diversity is lacking as well for the original case brought by Nevada 88. For the purposes of diversity, a corporation's citizenship is both its state of incorporation and its principal place of business. 28 U.S.C. § 1332(c). If Title Insurance is a citizen of Nevada for diversity purposes, then there is no diversity and the Court has no jurisdiction to hear any of the claims currently before it.

Here, Nevada 88's Complaint alleges facts which could, if proven, support claims for breach of fiduciary duty, breach of contract, and loss of economic opportunity. Its action against Title Insurance, thus, is not merely as one among many asserting rights to a common pool of funds. Rather, it is seeking damages in the amount of $10,000,000 for claims relating to contract, tort, and property law. There is no party other than Nevada 88 who can claim the very rights claimed by it for breach of contract, breach of fiduciary duty, and loss of economic opportunity. If there was a breach of contractual or fiduciary duties, damages from that breach flow to Nevada 88 and to no third party. Likewise, Nevada 88 may seek recovery for its own loss of economic opportunity even if others do so as well. In short, Nevada 88 does not seek rights to escrow funds whose ownership is in dispute, it rather seeks damages flowing from Title Insurance's handling of the escrow account. Given the character of the claims asserted by Nevada 88, it would be inappropriate to interplead third persons by way of Title Insurance's Counterclaim.

■■■ If, on the other hand, Title Insurance is proceeding under a theory of statutory interpleader as its comment in its Supplemental Points and Authorities (# 45) suggests, this Court does not have jurisdiction over the interpleader claim.[5]

Federal Rule of Civil Procedure 22(2) provides the procedure a party seeking statutory interpleader must follow. However, it does not specify the jurisdictional requirements with which the movant must comply. Instead, it specifically incorporates the remedies provided under the Federal Interpleader Statute, 28 U.S.C. sec. 1335, and other statutes.

■■■ Section 1335(a)(1) provides that federal interpleader is only available for cases involving two or more adverse claimants of diverse citizenship. In *State Farm Fire & Casualty Company v. Tashire*, 386 U.S. at 530, 87 S.Ct. at 1203, the Supreme Court approved the long-standing traditional view of section 1335 as requiring only minimal diversity among claimants. In other words, federal statutory interpleader departs from the normal requirement that there be complete diversity among adverse parties. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). Under *Tashire*, as long as one claimant is diverse from one other claimant, it does not matter that some claimants are non-diverse as to the others. 386 U.S. at 530, 87 S.Ct. at 1203. However, all claimants mentioned within the papers before the Court are citizens of Nevada. Thus, not even the minimal diversity requirement of section 1335 is met. This Court does not have jurisdiction to hear any statutory interpleader claim advanced by Title Insurance.

On the above alternative grounds, the Court will grant Nevada 88's Motion to Dismiss Title Insurance's Counterclaim for Interpleader (# 23) as to the First Cause of Action therein.

■■■ In its Second Cause of Action Title Insurance requests a declaration of the rights and liabilities of Title Insurance, Nevada 88, SMD, and Ellis with respect to the subject escrow. *See* Answer and Counterclaim (# 11) at 13–16. Counterdefendant Nevada 88 seeks dismissal of the claim for declaratory relief on several alternative grounds. Since the Court holds that Nevada 88's first ground for dismissal is well-founded, the Court need not consider the alternative arguments.

First, Nevada 88 argues pursuant to Federal Rule of Civil Procedure 12(b)(6) that by seeking declaratory relief on escrow liabilities Title Insurance has failed to state a claim on which relief can be granted. More specifically, Nevada 88 argues that Title Insurance has failed to ask the Court for any appropriate relief not already contemplated in Nevada 88's original complaint against Title Insurance. As to the requested declaratory judgment regarding the rights and responsibilities of Plain-

5. Although none of the parties has raised this issue, jurisdictional defects may be addressed by the Court on its own motion. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 70, 60 S.Ct. 44, 47, 84 L.Ed. 85 (1939).

tiff/Counterdefendant Nevada 88, the Court holds that Nevada 88 is correct that any such declaration would merely be cumulative of judgment on the original complaint.

■ It would be wholly improper for the Court to issue a declaratory judgment as to third persons not party to the Counterclaim unless it found that the rights of those persons were adequately represented by either Nevada 88 or Title Insurance. The Advisory Committee Notes to Federal Rule of Civil Procedure 57 (Declaratory Judgment Actions) clarify that "[t]he petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited." Notes of Advisory Committee on Rules at Rule 57, ¶ 2. There has been no showing that Title Insurance can adequately represent either Ellis or SMD in this proceeding. Furthermore, it does not seem that it could do so, given the limited knowledge at its disposal of the relationships among possible parties and non-parties to the escrow agreement. Likewise, it would be misguided for the Court to assume that Nevada 88 could represent the rights of other persons who are claiming rights adverse to it.

Of course, since the other persons who may assert some rights under the escrow agreement (*e.g.*, Ellis and SMD) have been brought before this Court as Third–Party Defendants under the Court's ancillary jurisdiction, their rights with respect to Title Insurance can be fully adjudicated. At the conclusion of both the ancillary and main cases, Title Insurance will have had an opportunity to litigate fully its rights and liabilities associated with the escrow accounts at issue.

The Court will therefore grant Plaintiff/Counterdefendant Nevada 88's Motion to Dismiss Counterclaim as to the First and Second Causes of Action. Since dismissal was not sought as to the Third and Fourth Causes of Action, those claims will remain.

### Nevada 88's Motion to Dismiss Third–Party Complaint (# 36)

■ In the final motion before the Court, Nevada 88 moves to dismiss the action between Third–Party Plaintiff Title Insurance and Third–Party Defendants SMD and Ellis.

■ Federal Rule of Civil Procedure 14 provides guidelines for third-party actions. Rule 14 was designed to provide for the adjudication of rights of all persons involved in a controversy in order to avoid circuity of actions and multiplicity of suits. *See Mid–States Ins. Co. v. American Fidelity & Casualty Co.,* 234 F.2d 721, 732 (9th Cir.1956), (citing *Concordia College Corp. v. Great Am. Ins. Co.,* 14 F.R.D. 403, 405 (D.C.Minn.1953)). Rule 14(a) provides:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. . . .

Third-party impleader under Rule 14 properly falls within a court's ancillary jurisdiction. *United States v. Pioneer Lumber Treating Co.,* 496 F.Supp. 199, 201 (E.D. Wash.1980). *See also* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3523, at 82 (2d ed. 1990).

■ Title Insurance has argued that Nevada 88 does not have standing to seek dismissal of the third-party complaint. Opposition (# 40) at 7, 11. 27–28, through 8, 1. 1. The Court disagrees. Rule 14(a) provides that, "Any party may move to strike the third-party claim, or for its severance or separate trial." The Notes of the Advisory Committee on Rules with respect to the 1963 Amendment further elaborate that the Court can dismiss third-party complaints upon its own motion if certain factors are present:

> After the third-party defendant is brought in, the court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim, or to sever the third-party claim or accord it separate trial if confu-

sion or prejudice would otherwise result. . . .

Note to Rule 14. In short, Nevada 88 has standing to seek dismissal of the third-party complaint.

 In its Third–Party Complaint Title Insurance alleges facts which, if further elaborated upon and proved, might support a claim for indemnification against SMD and/or Ellis. More specifically, Title Insurance alleges that its cancellation of the escrow directly resulted from SMD's cancellation order and Ellis's attempt to thwart the close of escrow. If Title Insurance can demonstrate that its cancellation was consistent with and due to a duty owed to SMD or Ellis, it might be able to claim indemnification for any damages owed to Nevada 88. Indemnification actions properly fall within the Court's ancillary jurisdiction under which third-party claims are brought. *See, e.g., Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

In conclusion, the Court finds that the claims asserted by Title Insurance are not so obviously unmeritorious as to warrant dismissal under Rule 14. Furthermore, since the trier of fact will be the Court and not a jury,[6] only minimal risk of confusion or prejudice can be associated with retaining the third-party action. In an exercise of its discretion, the Court will therefore deny Plaintiff Nevada 88's Motion to Dismiss Third Party Complaint (# 36).

### ORDER

IT IS THEREFORE ORDERED that Third–Party Defendant G.C. Swarts Management and Development, Inc.'s Motion to Dismiss (# 22) is denied.

IT IS FURTHER ORDERED that Third–Party Defendant Frank A. Ellis, Jr.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (# 24) is denied.

IT IS FURTHER ORDERED that Defendant Title Insurance's Motion to Dismiss and Request for Oral Argument (# 34) is denied.

IT IS FURTHER ORDERED that Plaintiff/Counterdefendant Nevada 88's Motion to Dismiss Counterclaim (# 23) is granted as to the First and Second Causes of Action in Title Insurance's Answer and Counterclaim (# 11). Since no dismissal was sought regarding the Third and Fourth Causes of Action in the Counterclaim, these issues will remain.

IT IS FURTHER ORDERED that Plaintiff/Counterdefendant Nevada 88's Motion to Dismiss Third–Party Complaint (# 36) is denied.

---

**6.** Plaintiff did not make a demand for a jury trial. Therefore, its right to trial by jury has been waived. Fed.R.Civ.P. 38(d). The Court will be the finder of fact should this case proceed to trial. Fed.R.Civ.P. 39(b). *See also* Local Rule 135.4.